UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X    Case No.

TRUSTEES OF THE PLUMBERS &
STEAMFITTERS LOCAL 21 WELFARE FUND,

**COMPLAINT**

Plaintiffs,

--against--

ELEVANCE HEALTH, INC. d/b/a ANTHEM
HEALTH CHOICE ASSURANCE, INC. D/B/A
ANTHEM BLUE CROSS AND BLUE SHIELD
d/b/a ANTHEM f/k/a EMPIRE HEALTHCHOICE
ASSURANCE, INC. d/b/a EMPIRE BLUECROSS
BLUESHIELD,

Defendant.

------------------------------------------------------------------X

Plaintiffs by their attorneys Barnes, Iaccarino & Shepherd LLP allege as follows:

## NATURE OF THE ACTION

1.      This is civil action brought pursuant to 29 U.S.C. § 1109; 29 U.S.C. § 1104 and 29 U.S.C. § 1132 by the Plumbers & Steamfitters Local 21 Welfare Fund (hereinafter referred to as "Local 21 Fund") through their Board of Trustees for a breach of fiduciary duty.

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiffs, Trustees of Plumbers & Steamfitters' Local 21 Welfare Fund (hereinafter referred to as "Plaintiffs") are, at all relevant times, fiduciaries of a jointly administered multi-employer, labor management trust fund as defined by Section 3(21)(A) and Section 502(a)(3) of ERISA (29 U.S.C. Sections 1002(21)(A) and 1132(a)(3)). The Local 21 Fund is established and maintained by the Plumbers & Steamfitters Local Union No. 21 ("Union") and various Employers pursuant to the terms of the Collective Bargaining Agreements ("CBA") and Trust Indenture in accordance with Section 302(c)(5)(1) of the Taft-Hartley Act (29 U.S.C. Section 186 (c)(5)). The

1

Local 21 Fund is a welfare employee benefit plan within the meaning of Sections 3(1) and 502(d)(1) of ERISA (29 U.S.C. Sections 1002(1) and 1132(d)(1)), and a multi-employer plan within the meaning of Section 3(37) of ERISA (29 U.S.C. Section 1002(37)). Plaintiffs are Trustees of the Fund within the meaning of Section (3)(16)(B)(iii) of ERISA (29 U.S.C. §1002(16)(B)(iii)).

3.      The Local 21 Fund provides welfare benefits to participants and beneficiaries whose employers are required to contribute to the Local 21 Fund pursuant to collective bargaining agreements ("C.B.A.") with the Union.

4.      The Local 21 Funds' principal office is located and administered at 1024 McKinley Street, Peekskill, NY 10566, County of Westchester.

5.      Upon information and belief, Defendant Elevance Health, Inc. d/b/a Anthem Health Choice Assurance, Inc. d/b/a Anthem Blue Cross and Blue Shield d/b/a Anthem f/k/a Empire HealthChoice Assurance, Inc. d/b/a Empire BlueCross BlueShield ("Anthem"), is a New York-based Health Care Administrator Corporation with its principal location at 9 Pine Street, 14th Floor, New York, NY 10005.

6.      This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1109; 29 U.S.C. § 1104; 28 U.S.C. § 1331 and 29 U.S.C. § 1132 because Local 21 Fund's claims arise under ERISA.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) because the Defendant resides in the Southern District of New York and a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York. Venue is also appropriate pursuant to 29 U.S.C. § 1132(e)(2).

2

## GENERAL ALLEGATIONS

**A.    Anthem Served as the Claims Administrator for the Local 21 Fund and is a Fiduciary**

8.    Local 21 Fund self-funds and maintains its own health care plan ("Health Plan" or "Plan") for its participants and beneficiaries. As such, the Local 21 Fund pays the actual employee health care costs covered by the Health Plan through contributions made pursuant to C.B.A.s with the Union or a participation agreement with the Local 21 Fund.

9.    Anthem provides claims administrative services to self-funded health plans such as the Local 21 Fund.

10.    Local 21 Fund offers a Health Plan utilizing the Anthem provider network for its participants and beneficiaries to use.

11.    In order to better maintain and administer the Health Plan utilized by its participants and beneficiaries, the Local 21 Fund contracted with Defendant Anthem to administer certain elements of the Local 21 Fund's Health Plan, one of the elements being the processing and adjudication of claims.

12.    On or about February 1, 2017, Anthem[1] and the Local 21 Fund entered into an Administrative Services Agreement ("ASA") for Anthem to serve as the Claims Administrator to perform claims administrative services which include but are not limited to:

      a.  Processing claims, including the investigation and review of such claims, to determine what amount, if any, is due and payable according to the terms and conditions of the plan;

---

[1] At the time of execution of the ASA, the Defendant was known as Empire HealthChoice Assurance, Inc. d/b/a Empire BlueCross BlueShield ("Empire").

b. Utilizing Anthem's medical policies and medical policy exception process, pre-certification and/or preauthorization policies, provider contract requirements, and claim filings deadlines;

c. Disbursing payments to participants, beneficiaries, and providers that Anthem determines to be due;

d. Determining benefits for the eligible participants and interpreting the terms of the plan;

e. Instituting utilization management, case management, disease management, or other programs at Anthem's discretion;

f. Conducting medical necessity review, utilization review, and a referral process, which may include, but is not limited to: (a) preadmission review to evaluate and determine the medical necessity of an admission or procedure and the appropriate level of care, and for an inpatient admission, to authorize an initial length of stay; (b) concurrent review throughout the course of the inpatient admission for authorization of additional days of care as warranted by the patient's medical condition; and (c) retrospective review;

g. Performing case management services to identify short- and long-term treatment programs where determined appropriate by Anthem.

13. In exchange for Anthem's services as Claims Administrator, the Local 21 Fund paid a monthly administrative fee to Anthem.

14. In sum, Anthem would perform the claims management and adjudication services as determined necessary by Anthem and Anthem would, at its discretion, process claims to pay providers on behalf of the Local 21 Fund.

4

15. As part of the ASA, the Local 21 Fund utilized Anthem's network of health care providers. As the Claims Administrator, Anthem is and was responsible for processing claims and determining the costs incurred by the Local 21 Fund pursuant to the negotiated rates established between Anthem and their network providers.

16. Pursuant to the terms of the ASA, Anthem was delegated and (1) exercised discretionary authority with respect to management of the Plan; and (2) had discretionary authority and responsibility in the administration of the Plan.

17. The ASA, as drafted by Anthem, states that the Fund delegates to Anthem (f/k/a "Empire") fiduciary authority to determine claims for benefits under the Plan and to act as the appropriate fiduciary under Section 503 of ERISA (29 U.S.C. §1133).

18. Pursuant to the ASA, the Local 21 Fund did delegate such fiduciary authority to Anthem to determine claims for benefits under the Health Plan and serve as the fiduciary for purposes of Section 503 of ERISA.

19. Therefore, Anthem functioned as a fiduciary in its administration of the Health Plan within the meaning of 29 US.C. 1002(21).

20. The Local 21 Fund contracted with CM Risk Management Services, LLC to provide stop loss insurance coverage to limit the Local 21 Fund's financial liability for "High Dollar Claims" by requiring the stop loss insurance policy to reimburse the Local 21 Fund for high-cost claims that exceed a pre-determined, negotiated threshold ("Stop Loss Policy").

21. The Stop Loss Policy reimbursed the Local 21 Fund for eligible expenses/claims incurred from February 1, 2024, to January 31, 2025, and eligible expenses/claims paid from February 1, 2024, through to July 31, 2025. Any expenses/claims incurred or paid outside these periods are not eligible for reimbursement under the Stop Loss Policy.

5

22.    Pursuant to the terms of the Stop Loss Policy, the Stop Loss Carrier will reimburse the Local 21 Fund for any eligible claims above $275,000.00.

23.    Pursuant to the ASA, Anthem is required to provide the Local 21 Fund with claims data to allow the Local 21 Fund to file a claim under a stop loss policy issued by an entity other than Anthem.

**B. Anthem tracked and notified the Local 21 Fund of High Dollar Claims**

24.    In their capacity as Claims Administrator, Anthem was responsible for administrating welfare claims for participants, including for participants with claims that were considered by Anthem to be "High Dollar Claims".

25.    Anthem engaged in a long standing and consistent practice of advising the Local 21 Fund and the Stop Loss Policy Carrier of "High Dollar Claims" and providing the Local 21 Fund with claims data required to file claims for reimbursement under the Stop Loss Policy.

26.    Local 21 Fund relied on Anthem's notice of "High Dollar Claims" to report such claims to their Stop Loss carrier for reimbursement.

27.    Upon information and belief, Anthem is aware of the Stop Loss reimbursement process and the existence of an expiration date for the submission of claims.

28.    Anthem was the only source of "High Dollar Claims" information for the Local 21 Fund.

29.    Upon information and belief, on December 20, 2024, Anthem received a high dollar claim from Westchester Medical Center in the amount of $5,657,522.49 for a Local 21 Fund participant for service dates of July 8, 2024, to November 22, 2024 ("Disputed Claim").

30.    The Disputed Claim was on behalf of a participant of the Local 21 Fund who was receiving treatment for an ongoing heart condition that had resulted in a previous High Dollar

Claim with service dates of April 30, 2024, to July 7, 2024, incurred by the Local 21 Fund during the same Stop Loss Policy period ("Prior Claim").

31.     Anthem provided the Local 21 Fund a High Dollar Claim notice of the Prior Claim on January 15, 2025.

32.     Anthem knew or should have known that the Local 21 Fund would need timely notice of further High Dollar Claims for this participant after receiving the Prior Claim.

33.     The Disputed Claim was paid by Anthem in November of 2025 in the amount of $1,258,470.69 plus a New York State Statutory Surcharge of $121,190.73 for a total payment of $1,379,661.42.

34.     Pursuant to the ASA, Anthem, in its discretion, engaged in the processes it deemed necessary to review and adjudicate the Disputed Claim.

35.     The first notice to the Local 21 Fund of the Disputed Claim was November 24, 2025, almost a year after Anthem's receipt of the providers claim submission in December of 2024.

36.     Unlike the Prior Claim for the same participant, Anthem in its discretion paid the Disputed Claim over a year from the initial Disputed Claim service date of July 8, 2024, without any notice to the Local 21 Fund before the November 2025 payment.

37.     Local 21 Fund advised Anthem that the Stop Loss reimbursement period had ended due to Anthem's failure to timely adjudicate the claim within the paid and incurred time periods under the Stop Loss Policy, the Local 21 Fund was not eligible for reimbursement of the Disputed Claim.

38.     As a fiduciary of the Local 21 Fund for the purposes of processing and adjudicating claims, Anthem was solely responsible for the delay in approving the claim under the terms of the Plan.

7

39.    If Anthem timely processed and paid the Disputed Claim, the Local 21 Fund would have received $1,379,661.42 in reimbursement under the Stop Loss Policy.

40.    The Local 21 Fund initially rejected payment of the Disputed Claim due to Anthem's failure to timely process the claim.

41.    Anthem suggested that the continuation of their services under the ASA, including the adjudication of future claims, was contingent on the Local 21 Fund's payment of the Disputed Claim which the Local 21 Fund rejected due to Anthem's failure to timely review and approve.

42.    On or about February 13, 2025, Local 21 Fund paid Anthem $1,258,470.69 plus a New York State Statutory Surcharge ("surcharge") of $121,190.73 for a total of $1,379,661.42 for payment of the Disputed Claim.

43.    The reimbursement expiration date for the Local 21 Fund to submit a claim for reimbursement to the Stop Loss carrier was July 31, 2025.

44.    Given Anthem's failure to timely notify the Local 21 Fund, the reimbursement period with the Stop Loss Carrier had expired which caused substantial financial injury to the Plaintiff in the minimum amount of $1,379,661.42.

**First Cause of Action**
**Breach of Fiduciary Duty Under ERISA**
**(29 U.S.C. §§ 1104 (A) and 1109 (A))**

45.    Plaintiff Local 21 Fund hereby incorporates by reference the allegations contained in the preceding paragraphs.

46.    Plaintiffs bring this cause of action under 29 U.S.C. §§ 1132(a)(3), 1104(a) and 1109 (a).  Plaintiffs have standing to bring this cause of action under ERISA as fiduciaries.

47.    At all times relevant, Anthem was a fiduciary pursuant to 29 U.S.C. § 1002(21)(A) with respect to the Local 21 Plan because (a) it exercised discretionary authority and control over

management of the Plan; (b) it exercised authority and control over management and disposition of the Plan's assets; and (c) it had discretionary authority and responsibility in the administration of the Plan.

48.    As a self-proclaimed fiduciary, Anthem is required, among other things, to discharge its duties solely in the interest of the beneficiaries of the Local 21 Fund, preserve Plan assets, fully disclose its actions, and abide by any statutory obligations imposed on it. Anthem also held a duty to act in accordance with the documents and instruments governing the Plan. 29 U.S.C § 1104 (a)(1)(B).

49.    Anthem owed a separate and independent fiduciary duty to discharge its obligations in accordance with the ASA and the Plan documents pursuant to 29 U.S.C § 1104 (a)(1)(D).

50.    Anthem by processing and submitting the Disputed Claim to the Local 21 Fund almost a year after the full Disputed Claim was incurred failed to act with the care, skill, prudence, and diligence that a prudent person acting in a like capacity would use under the circumstances.

51.    Anthem knew or should have known that delaying the processing of a claim almost a year after it was received from a provider would affect the Local 21 Fund's ability to seek reimbursement of the claim through their Stop Loss Carrier under the Stop Loss Policy.

52.    Anthem breached its fiduciary duty when it failed to exercise the care, skill, prudence, and diligence under the circumstances that a prudent fiduciary acting in a like capacity and familiar with such matters would use, as listed under 29 U.S.C. § 1104(a)(1)(B) by failing to implement and exercise sufficient quality control and oversight of its claim process and medical management system to timely review claims especially considering the Disputed Claim was for an ongoing condition for which Anthem had previously approved treatment and reported to the Local 21 Fund as a High Dollar Claim.

9

53.    Anthem failed to act solely in the interest of Local 21 Fund participants and beneficiaries by not tracking the timing of the Disputed Claim and not providing timely notice to Local 21 Fund of the Disputed Claim.

54.    As a direct and proximate result of Anthem's breach of fiduciary duty, the Local 21 Fund suffered losses.

55.    Anthem further breached its fiduciary duty by failing to timely notify the Local 21 Fund of the Disputed Claim which was well after the reimbursement period under the Stop Loss Policy causing substantial financial injury to the Plaintiff.

56.    Anthem's breach of its fiduciary duty has proximately caused damage to Local 21 Fund and its self-funded Plan in the minimum amount of $1,258,470.69 plus the surcharge of $121,190.73; interest and attorneys' fees.

## Second Cause of Action
### ERISA Equitable Relief 29 U.S.C.§ 1132 (a)(3)

57.    Plaintiff Local 21 Fund hereby incorporates by reference the allegations contained in the preceding paragraphs.

58.    Anthem is a fiduciary with respect to the Plan within the meaning of ERISA as a self-named fiduciary in the ASA.

59.    Anthem's breach of fiduciary duty by untimely payment of the Disputed Claim and untimely notice to Local 21 Fund of the Disputed Claim has injured the Local 21 Fund.

60.    Anthem by submitting the Disputed Claim to the Local 21 Fund almost a year from receipt by the provider failed to act with the care, skill, prudence, and diligence that a prudent person acting in a like capacity would use given its knowledge of the participant's treatment history and Stop Loss Insurance reimbursement deadlines.

10

61.     Anthem knew or should have known that processing a claim almost a year after the claim was received from a provider would affect Local 21 Fund's ability to seek reimbursement of the claim through their Stop Loss Carrier especially considering Anthem had previously reported to the Local 21 Fund and the Stop Loss Carrier on the Prior Claim for the purposes of submitting a High Dollar Claim under the Stop Loss Policy.

62.     Anthem failed to act solely in the interest of Local 21 Fund participants and beneficiaries by not tracking the timing of the Disputed Claim and not providing timely notice to Local 21 Fund of the Disputed Claim.

63.     As a direct and proximate result of Anthem's breach of fiduciary duty, the Local 21 Fund suffered losses.

64.     In addition to the inability of the Local 21 Fund to seek reimbursement of the Disputed Claim by the Stop Loss Carrier, the Local 21 Fund's payment of the Disputed Claim prohibited the ability of the Local 21 Fund to invest those funds.

65.     Accordingly, the Defendant is liable to Plaintiffs as restitution for the amount paid for the Disputed Claim in the amount of $1,258,470.69 plus the surcharge of $121,190.73 and interest, lost investment gains and attorneys' fees pursuant to 29 U.S.C. Sections 1132 (a)(3) due to the breach of their fiduciary duty.

**Third Cause of Action**
**Gross Negligence**

66.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs.

67.     Anthem is a fiduciary with respect to the Plan within the meaning of ERISA as a self-named fiduciary in the ASA.

11

68.    As a fiduciary, Anthem owed Plaintiff a duty of care to timely notify the Local 21 Fund of High Dollar Claims to maintain the financial assets of the Fund.

69.    Anthem with reckless disregard for its obligations and complete indifference to the Local 21 Fund's ability to file for and receive reimbursement from its Stop Loss Carrier, did not provide timely notice of the Disputed Claim.

70.    Anthem knew, or should have known, that the failure to timely notify Local 21 Fund of the High Dollar Claim would inevitably result in a financial loss to the Local 21 Fund.

71.    As a direct and foreseeable result of Defendant's grossly negligent conduct, the Local 21 Fund lost $1,258,470.69 plus the surcharge of $121,190.73 and interest as well as lost investment gains.

72.    Such an egregious failure proves a reckless disregard for Anthem's fiduciary duties and supports intentional wrongdoing, constituting gross negligence under New York State law.

73.    Therefore, Anthem is liable for gross negligence, and any purported limitation of liability under the ASA does not apply.

### Prayer For Relief

**WHEREFORE**, Plaintiffs respectfully pray for Judgment against Defendant Anthem, on all the claims for relief as follows:

As and For the First and Second Claims for Relief:

      (a) $1,258,470.69 plus the surcharge of $121,190.73 and interest;

      (b) Attorney fees, court costs and disbursements;

As and For the Second and Third Claim for Relief:

      (c) Loss of investment gains;

      (d) For such other and further relief as to the Court deems appropriate.

12

Dated: Hempstead, New York
        March 4, 2026

        Respectfully submitted,


        By: s/Danielle M. Carney, Esq.
        Danielle M. Carney, Esq.
        BARNES, IACCARINO & SHEPHERD, LLP
        Attorneys for Plaintiff
        3 Surrey Lane, Suite 200
        Hempstead, NY 11550
        (516) 483-2990